The court will proceed to the second case, GEFT Outdoors v. City of Westfield. Mr. Blake. Yes. May it please the court. My name is Rich Blakelock. I'm here on behalf of GEFT Outdoors. It's our position that the district court erred by refusing to enjoin the city for arresting GEFT when GEFT went out on December 16, 2017 to finish construction of its billboard. It also erred by granting the city's injunction, despite the city's unclean hands, based on the erroneous proposition that the signed ordinance was presumptively constitutional. I'd like to address three issues today. First of all, we think this case presents a unique set of facts in the post and pre-Reed v. City of Gilbert First Amendment context. The first issue is that strict scrutiny applies here to the city's signed ordinance because of the unique facts, which are there's an off-premises ban and exemptions, which in our view are clearly content-based. But what we have here is a proposed digital billboard with rotating messages every eight seconds. This is not a static commercial billboard that we've seen for years in this country, 38% of which historically GEFT has put as non-commercial speech. We're aware of no circuit court that have ruled on these set of facts, which we believe result in strict scrutiny. And we don't believe that the justification for the signed code, which is aesthetics, can sustain that scrutiny. Second, the court below erred by relying on an Indiana case for the proposition that the signed ordinance is presumptively constitutional. Because of the content-based nature of the restrictions, it is presumptively unconstitutional under federal law. The city did not even try to satisfy its burden before the district court. And then lastly, because the city cannot satisfy its burden, the entire ordinance should be stricken, which would then allow GEFT to finish the construction it intended to complete on December 16, 2017. So the first position is that, first of all, this is a content-based restriction. You have an off-premises ban and then multiple exemptions. The off-premises is content-based because you have to look at the sign to determine whether it advertises on-premises or off-premises. And there's testimony from Mr. Skelton, who's in charge of the sign enforcement, to that effect. The same is true, well, what he said on that was, I know of no other way to determine if it's on-premises or off-premises other than looking at the signed content. And the same is true for the exemptions. Mr. Skelton said, as it relates to the exemptions, the question was, is the only way to tell which exemption applies is to look at the content of the sign? Correct. He then went and read the exemptions and then said at least some of them, yes. So clearly, even the exemptions require a reading of the ordinance content, which in our judgment then renders the signed ordinance unconstitutional and places a burden on the city to prove it's constitutional. So the city argues, first of all, that read is limited to non-commercial speech. But even if we don't get there, and it's our position that it's not so limited, but the city says, well, this is commercial speech. Well, it ignores the fact that we have historically, and it's undisputed in the record, intend to in the future, put up 38% non-commercial speech and 62% commercial speech. That's well more than a de minimis amount of non-commercial speech. We don't have any more, and this is where we think the cases haven't quite caught up. We don't have a gentleman or lady climbing up a 75-foot pole with vinyl and like we saw in the Ebbing, Missouri case where you put vinyl on and you might change it once a month from eat McDonald's to eat Burger King to some political sign. That's not what we have anymore. So what the city does is with broad brush, say, well, it's commercial because you are receiving money for your advertisements. Well, that also doesn't hold muster because there's a long line of Supreme Court cases starting with New York Times versus Sullivan that says just because we are a commercial entity, we are a conduit for other people's commercial and non-commercial speech. So we get those protections. So what we have now is we have GIFT who can sit at its desk and load digital data that changes every eight seconds. It doesn't have to send anybody up to sign, et cetera. So conceptually, you could have an hour where there's 100% commercial speech. You could have an hour where there's 100% non-commercial speech. Or more realistically, you're going to have a mix of all of that, more than a de minimis mix based on this record. And GIFT's non-commercial speech includes political speech as well as charitable signs. Mr. Blakelock, I read the district court's orders here as really being rooted almost entirely. I read them all entirely in due process considerations. The merits of the First Amendment issues that you're raising just weren't addressed. Correct. And so why should we do that in the first instance? Well, I think first of all, I read the opinion more refusing to grant our injunction on the basis of our supposed unclean hands and then granting the city's because of the ordinance's presumptively constitutional. I think I have to break that down a little bit because our unclean hands in the judge's view were we intentionally violated a valid ordinance. Well, the ordinance in our judgment was invalid because it's presumptively unconstitutional. But more critical, to hold us being unable to get an injunction, and what we're asking for was don't arrest us when we go out and finish the sign. The court said, you have unclean hands. Well, we didn't, first of all, because all we were doing was non-violent civil disobedience. But secondly, the court didn't find the nexus between our unclean hands and the First Amendment issue. So we were prohibited from exercising our First Amendment rights. The Shondell case from this court said the unclean hands in that context that would prevent an injunction for somebody in our shoes would be if we somehow prevented somebody else from exercising their First Amendment rights. There has to be that nexus in order for any of our conduct to constitute unclean hands. Right, but all of that is not about read and not about content-based restrictions or anything like that. Right. Maybe I misread it, but I just read Judge Pratt to be saying, look, the temperature got turned up really high in this situation. You have people with arrest threats and everything else going on. So she just held the status quo in place, right? But she did not get into the merits of the First Amendment issues. So nobody's gotten into them yet. She did not because she held that they are presumptively constitutional based on an Indiana case, Hobble versus Hobble, or Hobble versus somebody else. Presumptively constitutional, though, for purposes of ruling upon motions for either temporary or preliminary injunctive relief. Correct. Not for purposes of finally resolving the claims for all purposes in the litigation. That is correct, what she did. But she did so on the basis of the statute being presumptively constitutional on an Indiana case, which had no First Amendment issues, had no constitutional issues for that matter. It was an accident case where an ice cream truck hit a kid. And the question was whether the local regulations dealing with lights on ice cream trucks conflicted with the state ones. So it had nothing to do with it. Federal law says two things. First Amendment rights are so critical that if there is some oppression, we shouldn't have to wait, in this instance, 16 months to be able to exercise them. It is a critical issue. And so had the court applied the right standard and said, well, gee, these are presumptively unconstitutional, it was incumbent on the city to then come in and say, well, wait a minute. I understand they're presumptively constitutional because they're content based, but here's why it is constitutional. But that's an odd approach, isn't it? I mean, we don't presume that the United States Congress acts unconstitutionally or that the Indiana legislature. I mean, we don't, even if they're regulating in an area that affects speech, we don't, our first step as a legal matter is not to presume that legislatures or local communities act unconstitutionally. I guess, I mean, and I very respectfully say this, I'm not sure why I can't, though. I get to use my property if I'm gaffed, however I want to use my property, unless it's been lawfully restrained. And I, especially when it comes to the First Amendment, do I have to wait 16, 18, two years to be able to vindicate my rights when this is clearly a content-based statute, which by law says it's presumptively unconstitutional. So it's void. I mean, that's the, I mean, I appreciate that, but this court or this country has had a long history of nonviolent civil disobedience ignoring laws where people ignore laws to their peril. And Gaff said, I'll pay the fines. The city had the, could fine us. They could seek an injunction. What they couldn't do was arrest us. And that's what they did. And so civil disobedience is... They did arrest you? Pardon? They did arrest you. They did not, but they got all the way to the point of the arrest where... But who said they were going to arrest you? The police? The city attorney with the police standing with... The contract attorney, right? Who identified himself as a city attorney, but that is correct. So, Your Honor, I think there's a few reasons why we think we should get to the constitutional issue. One is because it's a First Amendment issue and this has been 16 months long where we have not been able to exercise our free speech rights on what we believe is an unconstitutional ordinance. And we believe that under the authority we've cited, this court has the ability to get to the merits of that issue. Otherwise, we go back down below and we're going to be another 16, 18 months and back up here the whole time. We believe on December 16, 2017, we had the right to erect a billboard, even if some days later the court said, take it down. Because the city clearly had unclean hands by taking an action that they were not authorized to do, threatening arrest with police on premises, preventing us from finishing... Well, you've stretched that to the point, police on the premises, there had to be a police officer there. And now you have somebody who is a contract, not really an employee or officer of the city, saying we're going to arrest you. That doesn't sound very strong. Your Honor, with Mr. Zager saying and pointing to the people on the premises, I'm not going to point at you, but you're going to get arrested, you're going to get arrested, you're going to get arrested, and you're going to jail if you don't stop this construction. That's not something to be dismissed respectfully on the receiving end of that. When we know, because we looked at it, they have no ability to arrest us. And by the way, they had almost 30 days. We did this case the way we did it, because Geft has sued the city of Indianapolis before. We didn't put a billboard in the ground. The court said, yeah, it's unconstitutional, but the city changed their amendment in the meantime, and Geft, you get damages. Well, we didn't want damages. We wanted the ability to speak. So in this situation, we said we're going to put the stick in the ground, because that's what judge... Why didn't you just try to get the law changed? Excuse me? Why didn't you take some of their action other than civil disobedience? Because it would be futile in Westfield. I mean, you can look at all... Cities don't voluntarily agree to legislate for more off-premises billboards. They just don't... I mean, it's futile. It's similar to us having to go try to get a variance. We've tried to get variances. You get shut down every time. This is not a popular community mode of speech, but it is a protected mode of speech. So as it relates to the constitutional question, the city of Troy case we think is instructive. That case went through the analysis that we do, which is it's content-based, yes. Which standard of review do we apply, strict scrutiny or content or intermediate scrutiny? The court declined to extend Reed v. City of Gilbert to commercial speech, but did then say this is a unique situation because it was a digital billboard. But in that situation, the proprietor of the billboard only said that I will put one of 32 screen flips as non-commercial. The court said that's de minimis, and therefore we're going to treat it like commercial speech. In this case, if we take the same approach, we will have quashed 32 percent or 38 percent of non-commercial speech, which is much more than de minimis. So we believe that even if the court does not apply Reed to commercial speech, that under the city of Troy case and the logic from that case, that when you have a material amount of non-commercial speech on a constantly rotating billboard, that strict scrutiny should apply because you want to err on the side of not quashing speech. The second point, we talked about being presumptively constitutional. I will very briefly talk about severance, which is if the off-premises is out and the exemptions are out, the whole ordinance has to go out because what you are left with is political signs are allowed in Westfield without a permit. They're in the exemption section. If the exemption section is gone, in the city of Westfield, I can get an on-premises commercial sign. I can get an off-premises commercial sign. I have to go get a variance to put up a political sign. That is unacceptable under any cases that have discussed this, elevating commercial speech over non-commercial speech. In that situation, even though there is a savings clause, the courts in Indiana have said the court must still determine the legislative intent. In this situation, we find it hard to believe that the city of Westfield would want non-commercial speech to be treated differently than commercial speech. I see my five minutes is up. Thank you. May it please the court. The district court made a very simple and very common sense ruling. It ruled only that GEFT was not entitled to the preliminary relief it sought because it came to court with unclean hands. It decided that GEFT, having filed this lawsuit and having asked the district court to rule, could not unilaterally decide that the city's uniform development ordinance, both the provisions relating to location improvement permits or building permits and the provisions relating to sign permits, were inapplicable or void and proceed to go about its business as if the UDO did not even exist. In sum, the district court did not like the fact that GEFT, after having filed this lawsuit, refused to allow the lawsuit to take its course and wait for the district court to rule. The district court never reached the First Amendment issues, and it's important to understand why and how the district court never got to those First Amendment issues. The district court had two motions before it, and it took up GEFT's motion first in its ruling. In addressing GEFT's motion, the district court observed that GEFT had expressly stated that the district court did not need to rule on the First Amendment issues to rule on GEFT's motion for preliminary relief. As GEFT said, its request was based solely on the violation of its due process rights. So then the district court looked at the facts surrounding GEFT's conduct. It found that GEFT decided that it did not have to apply for a location improvement permit. It decided that GEFT decided that it didn't have to comply with the city's stop work notices. The district court recognized that GEFT decided it could disregard the letters the city sent it regarding the ordinance violations, and GEFT decided it could move forward to complete the construction of this electronic pull sign without waiting for the district court to rule. The district court determined that it was not for GEFT to decide the applicability or the constitutionality of the UDO, because that decision was for the court in due course. In its ruling, the district court observed that ordinances are presumptively valid until a court, and that's a key word in the district court's ruling, until a court has determined the ordinance to be inapplicable or otherwise unconstitutional. What GEFT has done here in connection with this appeal is GEFT grasps a hold of that one sentence in the district court's ruling and misconstrues it by arguing that the district court applied the wrong legal standard, that the district court was not to apply a presumption of constitutionality, but rather a presumption of unconstitutionality. The thing that GEFT is missing, and the point of the district court, the district court, as I mentioned in using the word court, was saying that persons, including corporate persons like GEFT, they must presume that ordinances are valid, and that they cannot go about avoiding them or violating them as they please. The key here is that the district court didn't say it was making any presumptions about the UDO at that point. It just said that GEFT couldn't make the presumption that it was unconstitutional, and that GEFT was not entitled to the preliminary relief that it wanted until the district court ultimately made its decision on the merits. So I think although the district court didn't put it this way in its ruling, in essence what it was saying to GEFT is even if Reed versus the town of Gilbert might cause some ordinances, or at least parts of them, to be stricken as unconstitutional, it didn't hold that persons, including corporate persons, can unilaterally declare ordinances to be unconstitutional and do whatever they want. In essence, Reed didn't sanction lawlessness. Now having made the decision that GEFT was not entitled to the preliminary relief it wanted, the city's motion at that point was basically moot. It was moot in the sense that the district court didn't have to take up the city's motion, because the practical effect of denying GEFT's motion was to give the city what it wanted, which was essentially the status quo to preclude GEFT from moving forward to complete the construction of this electronic billboard pending the outcome of the lawsuit. And I think the fact that the district court recognized at that point it wasn't necessary to take up the city's motion at that point is revealed by this language in its order, and I want to just kind of quote this and point it out to you. It said, in light of the court's ruling on GEFT's motion, the court grants Westfield's motion for restraining order to the extent that it requests an order prohibiting GEFT from continuing any work on the pole and digital sign until after the court rules on the constitutionality of the UDO and resolves the litigation on its merits. And I think what's important about that sentence that I just quoted out of the district court's ruling are the words, in light of, and to the extent. By using those words, the district court clearly signaled that its grant of the city's motion was simply the necessary corollary or result of its denial of GEFT's motion. So, the district court didn't reach the First Amendment issues because its ruling didn't require it to do so. And accordingly, the district court did not err when it didn't reach the First Amendment issues. The district court said it would reach those issues later in connection with its ruling on the merits, and this court should allow it to do so. There is no need for this court to decide those issues now. And it should not accept GEFT's invitation to leapfrog to the constitutional issues before the district court has an opportunity to address them first. Even if the district court had determined that GEFT did come to court with clean hands, GEFT did not establish its entitlement to the preliminary injunction it sought. It sought it on due process grounds. One, a procedural due process ground. It wasn't entitled to that. GEFT claimed that it had a right to notice and an opportunity to be heard before being told it couldn't put up the billboard. Its basis for that procedural due process claim is that the stop work notices that were posted on this poll and on the no trespass sign didn't strictly comply with the UDO's own provisions. Even if that is true, the law is well established that a governmental entity's failure to strictly comply with its own procedures doesn't make out a federal due process claim. Its other argument was based on a substantive due process issue. GEFT wanted the district court to find that on this Saturday morning, when the representatives of GEFT were out there proceeding to put up this electronic billboard, even though they had been issued stop work notices, the city attorney comes up and there's two men that essentially get into a disagreement out on the side of the road on a cold Saturday morning in December. GEFT wants to say that when the city attorney told GEFT and GEFT's representatives that if they proceeded to put up this billboard, they'd be arrested, that that was so shocking to the conscious that it's the type of offense, it creates a constitutional offense. It's our position that it just doesn't. When this court looks at the long line of cases that talk about substantive procedural due process and the kinds of cases that the conduct is shocking to the conscious to implicate the Constitution. We're talking about the seminal case of Roken where police officers took a guy to a hospital and had his stomach forcibly punched, pumped. We're not talking about a disagreement between two strong-headed men on the side of the street. And to the extent that GEFT is claiming that there was this threat of arrest, GEFT's own filings in this case time and time again state that the UDO didn't provide for arrest for an ordinance violation and neither does Indiana law. And in fact, that's correct. But nobody could have predicted that the city attorney would have made this threat of arrest. This was something that was sudden, unexpected, in the heat of the moment. It wasn't the kind of thing that the city could have reasonably anticipated and provided GEFT with a notice and an opportunity to be heard. This is the kind of random, unauthorized conduct that if there is any kind of tortuous situation here, this is something that GEFT can address after the fact. This is not something where GEFT was entitled to notice and an opportunity to be heard. So even had the district court moved on to the merits of GEFT's preliminary injunction, we believe it still would have failed. Now, we have in our brief addressed some of the First Amendment issues solely because that's what GEFT did. They brought these First Amendment issues to the court. But it's our position that those First Amendment issues are best resolved by the district court at this point. It's our position that the record on severance is not yet fully established, and so that it would be, even if this court were to entertain the First Amendment issues, and again, it's our position that it's premature and this court should not. It should let the district court do its work. Even if the court should go on to those First Amendment issues, and even if it should find that some provisions of the sign ordinance are content-based, this court cannot decide whether those provisions cause the entire Uniform Development Ordinance to fail or the entire portion of the sign ordinance to fail because the argument, the record, the issues are just not yet developed in the district court. The city of Westfield respectfully asks this court to affirm the district court's ruling, and if and when the time comes for this court to take up the First Amendment issues, it will be better positioned to do so on another day, but it is not today. Thank you. Thank you. Thank you. I'll address a couple of issues. I may be quick. If what I understand the consequence of the district court's order as argued by the city is, if I want to, if I believe that I am being oppressed in my speech because of a content-based provision and the law says, the federal law says it is presumptively unconstitutional, then my civil disobedience now has to be filing civil litigation. I mean that's the net of this. I can't, I'm not sure the difference between a corporation and an individual here, but anybody who wants to exercise First Amendment rights can't go act on those and then place the burden on the city, which has the remedies under the UDO, to come in and stop me if they want to, fine me if they want to. How do they stop you? You get an injunction. How does that stop you? Pardon? Well, then I'm in violation of a court order. There's a lot of examples of that in the civil rights movement. I mean Dr. Martin Luther King at one point was subject to an injunction not to pass over a bridge. He stopped at the bridge not because he thought that the law was constitutional, but because he knew he was going to violate an injunction order if he crossed over it. Local law, Mr. Blaycock, operates all the time with respect to free speech. You can't say, I undeniably have a right to hold a parade in the city of Chicago on an important matter to celebrate something. But you know what? I'm not going to go to City Hall to get a permit. Forget it. My First Amendment right is clear as a bell. No way. No way. The question there is, I don't know what Chicago's ordinance is, but is its ordinance constitutional? Take any city you want. I want to hold a march in the park. I want to gather a group in the park, and the local law requires me to get a permit. But forget it. The First Amendment is clear enough. I'm not bothering with that. Well, again, I don't know what Chicago's ordinances are, but if Chicago's ordinance is constitutional. It doesn't make any difference what they are. You can take any city you want. All right. Well, then I respectfully believe that the civil disobedience must then be to force companies to go file civil litigation and wait the period of time to get there. You guys never even sought a permit. We didn't have to. According to what? According to the fact that it's a signed permit, which is part of a fundamentally invalid and void ordinance because it's content-based. There's myriads of cases. Who says it is in your case? We do. You do. What about the other side? Well, they say it's not, so they can go in and prove it. But because it's content-based. And then you wait your period of time until the court makes a determination. But because it's content-based, the burden is on them to stop us, not on us to stop ourselves. And I think that's the fundamental difference. Well, has the municipality, if not trying to stop you, at least put a procedural barrier in place by requiring you to at least go through the permit process? But that is futile and it was unrequired. I mean, there's a lot of cases. Well, it's unrequired. It may eventually be a situation where you are correct about that, but not initially. We told the city. It's not like we went out December the 16th and said, hey, here we are, we're putting up a sign. We sued them after we put a sign in the ground because that was the consequence of the Geff versus Indianapolis case. We had to vest ourselves. Then we told them, hey, we're going to go do this in the next 30 days. I don't know what else I could have done. Wait until the court rules. Well, but then my First Amendment rights are quashed for 16 months. You know, we have a judicial system, and that's kind of the way it works, isn't it? I believe the burden is on the city in a presumptively unconstitutional ordinance to come forward and stop me, not for me to stop myself. Because they've already stopped me by their unconstitutional ordinance. I guess that's what we'll find out when we rule on this case, won't we? I'm not the judge. The issue, just real quickly, on the threat of arrest, the law in the Southern District of Indiana currently now is that it's okay for a government official without the authority to arrest somebody to go and threaten somebody with arrest without consequence. That's the law in the Southern District of Indiana. When nobody disputes that there was no authority to arrest anybody . . . Can you base that upon the district court's opinion here? Well, sure. I mean, because there is clearly unclean hands from the city by threatening to arrest us. I think that would really surprise Judge Pratt. Well, that's the consequence of the ruling, I think. I see my time is up. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.